# AFFIDAVITS OF BIAS AND PREJUDICE—CONTEMPT OF COURT.

[Sandusky (6th) Circuit Court, December 10, 1904.]

Parker, Hull and Haynes, JJ.

## JAMES HUNT v. STATE OF OHIO.

1. LANING R. L. 876 (R. S. 550) SETS FORTH PRIMARILY GROUNDS OF DISQUALIFICATION OF JUDGE, AND MEANS TO OBTAIN QUALIFIED JUDGE, ETC.

    Laning R. L. 876 (R. S. 550) sets forth primarily the grounds of disqualification of a judge, and secondarily the means to be pursued to obtain a judge who is not disqualified, and applies to all the common pleas judges of the state.

2. RIGHT TO FILE AFFIDAVIT OF PREJUDICE UNDER LAN. R. L. 876 (R. S. 550) NOT LIMITED TO CASES WHERE ALL JUDGES OF A SUBDIVISION ARE DISQUALIFIED, ETC.

    The right to file an affidavit of bias and prejudice against a common pleas judge under Lan. R. L. 876 (R. S. 550), is not limited to cases where all the judges of the subdivision are disqualified; but on the contrary, where sufficient affidavit has been filed against a particular judge, he is thereby disqualified from acting, and another judge of the subdivision must be brought in, unless all such judges are disqualified, in which case judges outside the subdivision may be drawn upon.

3. LANING R. L. 876 (R. S. 550) APPLIES TO CONTEMPT PROCEEDINGS.

    Laning R. L. 876 (R. S. 550), providing for the disqualification of a judge for bias or prejudice, applies to a contempt proceeding, founded on alleged act of contempt committed under circumstances requiring written charge and trial, although the judge against whom the affidavit is filed, is a judge of the court in which the contempt is charged to have been committed.

4. STATUTE CANNOT BE MODIFIED BY RULE OF COURT.

    A statute cannot be modified in any way by a rule of court; and in so far as such rule conflicts with, or purports to enlarge or restrict the operation of a statute, it is invalid.

5. FACTS CONSTITUTING BIAS OR PREJUDICE NEED NOT BE SET FORTH IN AFFIDAVIT OF PREJUDICE UNDER LAN. R. L. 876 (R. S. 550).

    The facts constituting bias or prejudice on the part of a common pleas judge are not required to be set forth in an affidavit filed under Lan. R. L. 876 (R. S. 550); an affidavit setting forth the statutory grounds of disqualification in the language of the statute, is sufficient. Hence, a rule of court requiring that every affidavit filed under said section shall specifically set forth the facts constituting the bias or prejudice of the judge, and further providing that every affidavit not in conformity therewith shall be stricken from the files, is invalid.

6. DIFFICULTY IN SECURING CONVICTION FOR PERJURY, NO EFFECT ON CONSTRUCTION OF LAN. R. L. 876 (R. S. 550).

    The difficulty or impossibility of securing a conviction for perjury, based upon a false affidavit of bias or prejudice which does not set forth specifically the facts constituting bias or prejudice, is not sufficient to require the courts to construe Lan. R. L. 876 (R. S. 550), as requiring that such facts be set forth in such an affidavit. The remedy, in such case, is with the legislature, and not with the courts.

Hunt v. State.

**7. Written Charges of Contempt of Court Required to be Filed Under Lan. R. L. 9173 (R. S. 5641).**

Where the contempt of court charged is not committed in the presence of the judge, nor at a time when court is in session, written charges against the persons so offending must be filed as required by Lan. R. L. 9173 (R. S. 5641); and the overruling of a motion to require such charges to be prepared in writing and filed, is reversible error.

**8. Filing Affidavit of Prejudice Against Judge in Contempt Proceedings Not a Contempt of Court Per Se.**

The filing of an affidavit of bias or prejudice against a common pleas judge in a contempt proceeding, under favor of Lan. R. L. 876 (R. S. 550), is not contempt of court *per se*.

**9. Error in Violating Nonpenal Statute or Rule of Court not Contempt of Court, When.**

Where one in good faith is pursuing in an orderly way and inoffensive manner what he supposes to be his rights in a court of justice, he is not guilty of contempt of court if he falls into error and violates either a rule of court or nonpenal statute; to constitute contempt in such case there must be something in the manner of doing the thing charged, or something in the circumstances under which it is done that is disrespectful to the court, or a hindrance to the administration of the affairs of the court, and the act must also be done wilfully and for an illegitimate or improper purpose.

**10. Mere Failure to Comply With Statute or Rule of Court not Contempt, Per Se.**

The mere failure to comply with a statute and rule of court requiring that all affidavits of bias or prejudice filed against a judge shall specifically set forth the facts constituting the bias or prejudice referred to, is not contempt of court *per se*.

**11. Bias or Prejudice a State of Mind Impossible to Show Facts Constituting, Etc.**

Bias or prejudice are states of mind; they are not only ultimate facts, but are also primary, elementary, and initial facts, which are not susceptible of a statement specifically showing the facts which constitute them. Hence, a rule of court requiring an affidavit filed under Lan. R. L. 876 (R. S. 550), to contain such a statement, calls for an impossibility, and is nugatory.

**12. Testing Validity of Rule of Court not Contempt of Court, When.**

Neither an attorney nor his client, who in good faith believe that a rule of court circumscribes their rights given them by law, are guilty of contempt of court by proceeding, under ordinary legal methods and in a respectful manner, to test the validity of such rule.

**13. Reviewing Court Confined to the Record in Determining Whether Facts Show Contempt of Court.**

A reviewing court will not go outside the record to determine whether there is matter, other than that contained in the record, which will support a charge of contempt of court.

**14. Contempt Proceedings are Quasi Criminal—Presumption of Innocence in Favor of Accused.**

Contempt proceedings are *quasi* criminal in their nature, and all the presumptions are in favor of the innocence of the persons charged; and a judge who is considering a contempt proceeding based upon an affidavit of bias or prejudice filed against him in the language of Lan. R. L. 876

Sandusky County.

(R. S. 550), under circumstances requiring written charges and trial, cannot take into consideration and use as evidence what he may suppose or know personally about the motives or purposes of the defendant, and of which no evidence was produced on the hearing.

ERROR to Sandusky common pleas court.

**Bartlett & Wilson, E. B. King** and **C. M. Seiders,** for plaintiff in error.

**H. C. DeRan,** for defendant in error:

As to the construction, scope and interpretation of Lan. R. L. 875 (R. S. 550). *Knaggs* v. *Conant,* 2 Ohio 26; *Clérmont Co. (Comrs.)* v. *Lytle,* 3 Ohio 289; *Hunter's Will,* 6 Ohio 499; *Rawson* v. *Boughton,* 5 Ohio 328; *State* v. *Winget,* 37 Ohio St. 153; *Gregory* v. *Railway,* 4 Ohio St. 675; *State* v. *Shaw,* 43 Ohio St. 324 [1 N. E. Rep. 753]; *State* v. *Rabbitts,* 46 Ohio St. 178 [19 N. E. Rep. 437]; *State* v. *Wolfe,* 6 Circ. Dec. 118 (11 R. 591); *Slingluff* v. *Weaver,* 66 Ohio St. 621 [64 N. E. Rep. 574]; *Felix* v. *Griffiths,* 56 Ohio St. 39 [45 N. E. Rep. 1092]; *Krause* v. *Morgan,* 53 Ohio St. 26 [40 N. E. Rep. 886]; *Fronce* v. *Nichols,* 12 Circ. Dec. 472 (22 R. 539).

As to contempt of court and proceedings under Lan. R. L. 9171 (R. S. 5639). *State* v. *Myers,* 10 Dec. Re. 238 (19 Bull. 302); *Steube* v. *State,* 2 Circ. Dec. 216 (3 R. 383); *Post* v. *State,* 7 Circ. Dec. 257 (14 R. 111); *Myers* v. *State,* 46 Ohio St. 473 [22 N. E. Rep. 43; 15 Am. St. Rep. 638]; *Hale* v. *State,* 55 Ohio St. 210 [45 N. E. Rep. 199; 36 L. R. A. 254; 60 Am. St. Rep. 691]; *Wallace* v. *Scoles,* 6 Ohio 429.

The common law is a part of our law so far as its principles are reasonable and consistent with the letter and spirit of our constitution and suitable to the condition and business of our people, and the state of our society. 1 Bates' Digest 407; *Gladwell* v. *Holcomb,* 7 Circ. Dec. 369 (14 R. 416); *Hale* v. *State,* 55 Ohio St. 210, 212 [45 N. E. Rep. 199; 36 L. R. A. 254; 60 Am. St. Rep. 691].

The statute does not apply to contempt proceedings. 1 Curwen 4 and 5; *Swift* v. *Luce,* 27 Me. 285; *Pitman* v. *Flint,* 27 Mass. (10 Pick.) 504; cases cited in 1 Curwen 5, note 6; *Slingluff* v. *Weaver,* 66 Ohio St. 621 [64 N. E. Rep. 574]; 1 Bouvier's Law Dic. (Rawle ed.) 416; *Felix* v. *Griffiths,* 56 Ohio St. 39 [45 N. E. Rep. 1092]; *Krause* v. *Morgan,* 53 Ohio St. 26 [4 N. E. Rep. 886]; *Fronce* v. *Nichols,* 12 Circ. Dec. 472 (22 R. 539); also see Hawes, Jurisd. of Courts 102.

The rule of court requiring affidavits of bias and prejudice to state the facts is not unauthorized and void and contrary to the provisions of Lan. R. L. 876 (R. S. 550). *Myers* v. *State,* 46 Ohio St. 473 [22 N. E.

Hunt v. State.

Rep. 43; 15 Am. St. Rep. 638]; *Hale* v. *State,* 55 Ohio St. 210 [45 N. E. Rep. 199; 36 L. R. A. 254; 60 Am. St. Rep. 691]; *Post* v. *State,* 7 Circ. Dec. 257 (14 R. 111); *State* v. *Myers,* 10 Dec. Re. 238 (19 Bull. 302); *Herndon* v. *Insurance Co.* 111 N. C. 384 [16 S. E. Rep. 465; 18 L. R. A. 547]; *Cochran* v. *Loring,* 17 Ohio 409; Kinkead, Practice 147, 148, 150, 179, 189; *Barry* v. *Randolph,* 3 Binn. (Pa.) 277; *Thompson* v. *Hatch,* 20 Mass. (3 Pick.) 512; 2 Bouvier's Law Dic. (Rawle ed.) 420, 938, 939; *Ganz* v. *Thompson,* 11 Ohio St. 579; *Wallace* v. *Scoles,* 6 Ohio 429; *Ludwig* v. *Casady,* 38 Bull. 250; *State* v. *Hanousek,* 10 Circ. Dec. 516 (19 R. 303); Kinkead, Code Pl. Sec. 249; *Emporia (City)* v. *Volmer,* 12 Kan. 622; *Territory* v. *Clancey,* 7 N. Mex. 580 [37 Pac. Rep. 1108]; *Territory* v. *Kendall,* 7 N. Mex. 580 [37 Pac. Rep. 1108]; *Reynolds* v. *Parkes,* 2 Dem. Surr. 399; *Anglemyer* v. *Blackburn,* 16 Ind. App. 352 [45 N. E. Rep. 483]; also see general discussion and citation of authorities, 8 Am. & Eng. Enc. Law (2 ed.) 28 to 31; 13 Cent. Dig. 2109 to 2127, inclusive; *Wood* v. *Ward,* 1 Dec. Re. 589 [10 W. L. J. 536]; *Beveridge* v. *Hewitt,* 8 Ill. App. 467; *Risher* v. *Thomas,* 2 Mo. 98; *Maline* v. *Hunt,* 29 Mo. App. 379; *Dubbis* v. *Turner,* 4 Yeates 361; *Maberry* v. *Morse,* 43 Me. 176; *Gist* v. *Drakely,* 2 Gill (Md.) 330 [41 Am. Dec. 426]; *Haskins* v. *Young,* 19 N. C. (2 Dev. & Bat.) 527 [31 Am. Dec. 426]; *Vail* v. *McKernan,* 2 Ind. 421; *Galloway* v. *State,* 29 Ind. 442; *Jeffersonville, M. & I. Ry.* v. *Avery,* 31 Ind. 277; *Redman* v. *State,* 28 Ind. 205; *Truitt* v. *Truitt,* 38 Ind. 16; *Thompson* v. *Persing,* 86 Ind. 303; *Jones* v. *Rittenhouse,* 87 Ind. 348; *Hoke* v. *Applegate,* 92 Ind. 570; *Pratt* v. *Pratt,* 157 Mass. 503 [32 N. E. Rep. 707; 21 L. R. A. 97]; *State* v. *Wolfe,* 6 Circ. Dec. 118 (11 R. 591); *Bachmann* v. *Milwaukee,* 47 Wis. 435 [2 N. W. Rep. 543]; 22 Am. & Eng. Enc. Law (2 ed.) 690; *State* v. *Shupe,* 16 Iowa 36 [85 Am. Dec. 485]; *State* v. *Winstandley,* 151 Ind. 316 [51 N. E. Rep. 92]; *Schmidt* v. *Mitchell,* 101 Ky. 570 [41 S. W. Rep. 929; 72 Am. St. Rep. 427].

The requirements of this rule of court would not impose upon litigants an impossible thing, in so far as it relates to bias and prejudice, and it is not therefore invalid for this reason.

If the statute or the rule or both, require such specific statement of facts constituting bias and prejudice and if they may be complied with, a failure to do so, amounts to a contempt. *Penn* v. *Brewer,* 12 Gill & Johns. (Md.) 113; 1 Bacon's Abridgment (Bouvier ed. 1868) 509; *State* v. *Goff,* Wright 78; *State* v. *Coulter,* Wright 421; *Spinning* v. *Insurance & Tr. Co.* 13 Dec. Re. 206 (2 Disn. 336); *Myers* v. *State,* 46 Ohio St. 473 [22 N. E. Rep. 43; 15 Am. St. Rep. 638]; *Steube* v. *State,* 2 Circ. Dec. 216 (3 R. 383); *Welch* v. *Barber,* 52 Conn. 147 [52 Am. Rep. 567]; 7 Am. & Eng.

Sandusky County.

Enc. Law (2 ed.) 33, 44, 56; *Harrison* v. *State*, 35 Ark. 458; Rapalje, Contempts 15, Sec. 13; *Moore* v. *State*, 47 Kan. 772, 777 [28 Pac. Rep. 1072; 17 L. R. A. 714]; 2 L. R. H. L. 361; *Middlebrook* v. *State*, 43 Conn. 257 [21 Am. Rep. 650]; *Spinning* v. *Insurance & Tr. Co.* 13 Dec. Re. 206 (2 Disn. 336); *Spears* v. *New York (Mayor)*, 87 N. Y. 359; Thompson, Trials 131, 161; 8 Am. & Eng. Enc. Law (2 ed.) 29 and cases there cited.

It is a contempt to violate a rule of court. *Wallace* v. *Scoles*, 6 Ohio 429; 1 Bacon's Abridgment (Bouvier ed. 1869) 509.

It is disrespectful to the court, under the circumstances of this particular case, to charge one with bias and prejudice. *Jones, In re*, 103 Cal. 397 [37 Pac. Rep. 385]; 10 Cent. Dig. 2383; 11 Alb. L. J. 408; also see, *Pryor, In re* 18 Kan. 72 [26 Am. Rep. 747].

The presumptions are not all in favor of the persons charged. *State* v. *Woodfin*, 5 Ired. Law (N. C.) 199 [42 Am. Dec. 161]; *Myers* v. *State*, 46 Ohio St. 473 [22 N. E. Rep. 43; 15 Am. St. Rep. 638]; *Post* v. *State*, 7 Circ. Dec. 257 (14 R. 111); *State* v. *Davis*, 10 Circ. Dec. 203 (18 R. 479); *Brimson* v. *State*, 63 Ohio St. 347 [58 N. E. Rep. 803]; *Cuddy, Petitioners*, 131 U. S. 280 [9 Sup. Ct. Rep. 703; 33 L. Ed. 154]; *Seventy-six Land & Water Co.* v. *Fresno Co.* (Sup. Ct.) 93 Cal. 139 [28 Pac. Rep. 813]; *Papke* v. *Papke*, 30 Minn. 260 [15 N. W. Rep. 117]; *Commonwealth* v. *Newton*, 1 Grant Cas. 453; *Lewis* v. *Miller*, 21 Miss. 110; *People* v. *Bergen*, 6 Hun. (N. Y.) 267; *Park* v. *Park*, 80 N. Y. 156; Thompson, Ohio Tr. Ev. Sec. 84, 85, 86, 94, 104; *Little Miami Ry.* v. *Collett*, 6 Ohio St. 182; *Whelan* v. *Kinsley*, 26 Ohio St. 131; *Wilson* v. *State*, 2 Ohio St. 319; *State* v. *Hutchinson*, 55 Ohio St. 573 [45 N. E. Rep. 1043]; *State* v. *Galloway*, 45 Tenn. (5 Coldw.) 326 [98 Am. Dec. 404]; *Williamson's Case*, 26 Pa. St. 9 [67 Am. Dec. 374]; Rapalje, Contempt 153, 214; *Brimson* v. *State*, 63 Ohio St. 347 [58 N. E. Rep. 803]; *Whittem* v. *State*, 36 Ind. 196; 4 Enc. Pl & Pr. 814; *State* v. *Tipton*, 1 Blackf. (Ind.) 166; 10 Cent. Dig. 2571, 2670; *Gammon, In re*, 69 Cal. 541 [11 Pac. Rep. 240]; *Turner* v. *Commonwealth*, 59 Ky. (2 Metc.) 619.

Laning R. L. 876 (R. S. 550), does not apply to proceedings in contempt, and the judge cannot be disqualified in contempt proceedings the same as in any case or matter. *Rawson* v. *Boughton*, 5 Ohio 328; *Hunter's Will*, 6 Ohio 499; *Chinn* v. *Trustees*, 32 Ohio St. 236; *State* v. *Bowersock*, 1 Circ. Dec. 75 (1 R. 127); *Pitts. C. C. & St. L. Ry.* v. *Bemis*, 64 Ohio St. 24 [59 N. E. Rep. 745]; Rapalje, Contempt Sec. 13.

This is not such a proceeding as should have been brought under the provisions of Lan. R. L. 9172, 9173 (R. S. 5640 and 5641), and not under Lan. R. L. 9171 (R. S. 5639). 1 Bouvier's Law Dic. (Rawle e.'

Hunt v. State.

420, and cases there cited; *Myers* v. *State,* 46 Ohio St. 473 [22 N. E. Rep. 43; 15 Am. St. Rep. 638]; *Hale* v. *State,* 55 Ohio St. 210 [45 N. E. Rep. 199; 36 L. R. A. 254; 60 Am. St. Rep. 691]; *State* v. *Myers,* 10 Dec. Re. 238 (19 Bull. 302); 7 Am. & Eng. Enc. Law (2 ed.) 27, 28, 29; *Stuart* v. *People,* 4 Ill. (3 Scam.) 395; *People* v. *Wilson,* 64 Ill. 195 [16 Am. Rep. 528]; *Besuden* v. *Besuden Co.* 4 Dec. 144 (3 N. P. 165); *Post* v. *State,* 7 Circ. Dec. 257 (14 R. 111); *Hannberger, In matter of,* 10 Cir. Dec. 561 (19 R. 651).

Parties cannot conclusively purge themselves of contempt even by filing answers denying acts alleged against them. *United States* v. *Sweeney,* 95 Fed. Rep. 434; *Myers* v. *State,* 46 Ohio St. 473 [22 N. E. Rep. 43; 15 Am. St. Rep. 638]; *State* v. *Myers,* 10 Dec. Re. 238 (19 Bull. 302); *Watson* v. *Bank,* 5 S. C. 159; *Wartman* v. *Wartman,* Taney C. C. 362 [29 Fed. Cas. 303]; *State* v. *Garland,* 25 La. Ann. 532; *People* v. *Freer,* 1 Caines 485, 518; *Woolley, In re,* 2 Ky. (11 Bush) 95; *Terry, In re,* 36 Fed. Rep. 419; Rapalje, Contempts Secs. 49 and 121, and notes.

**PARKER, J.**

This case is numbered 466, and following this case upon the docket, are the cases of James Hunt v. State of Ohio, 467; Harry E. Garn v. State of Ohio, 468; Harry E. Garn v. State of Ohio, 469; W. S. Bair v. State of Ohio, 470, and S. M. Fronizer v. State of Ohio, 471.

The cases are all alike in character and grew out of the same transactions, and they were heard together and will be disposed of together.

They are proceedings in error. Plaintiffs in error were convicted of contempt of court, and they prosecute error in this court from the judgment of conviction.

It appears that in September, 1904, the county commissioners of Sandusky county, made their annual report in writing to the court of common pleas of said county, under the provisions of Lan. R. L. 2193; R. S. 917 (97 O. L. 167-168) and thereupon the court appointed H. C. DeRan and Frank E. Seager to examine the same with the prosecuting attorney. Thereupon, the said DeRan and Seager caused subpoenas to be issued to W. S. Bair and S. M. Fronizer to appear before them and answer such questions as might be put to them relative to the official transactions of the county commissioners. Said persons appeared and were examined and, in the course of their examinations, declined to answer certain questions asked them by said DeRan. This fact was by said examiners reported to the court, Judge Horace S. Buckland presiding. The court thereupon appointed said DeRan and Seager to file and prosecute charges in contempt against said Baid and Fronizer.

Sandusky County.

Thereupon, said Bair and Fronizer, aided by their attorneys, James Hunt and Harry E. Garn, prepared and filed in said proceedings in contempt their affidavits alleging bias and prejudice upon the part of said Judge Buckland, such affidavits being under the provisions and in the language of Lan. R. L. 876 (R. S. 550), on that subject. Judge Buckland sitting as such court disregarded said affidavits and proceeded, against the objection of Bair and Fronizer, to further hear said charges of contempt, and on the hearing thereof ordered that Bair and Fronizer answer certain of the questions that they had declined to answer. The examiners then completed their examination of the commissioners' report and filed the same with the county auditor.

It does not appear that any further action was taken or was necessary with respect to the matter of requiring answers by Bair or Fronizer to the questions they had been ordered to answer. In other words, if the court was in error in disregarding the affidavits of prejudice, it does not appear that either Bair or Fronizer have attempted to prosecute error on that account, but they appear to have submitted to the order of the court and to have acquiesced in it.

I should add that in the proceedings against Bair and Fronizer, a great many questions were reported to the court that they were desired to answer, but they were excused by the court from answering most of those questions, and those that the court required them to answer they appear to have afterwards answered.

After hearing said charge of contempt against Bair and Fronizer and making the before mentioned order therein, Judge Buckland sitting as the court orally announced in open court that he would require Bair, Fronizer and their attorneys, James Hunt and Harry E. Garn, to appear and show cause why they should not be punished for contempt of court for preparing and filing the affidavits of bias and prejudice in the aforesaid contempt cases of Bair and Fronizer, and appointed H. C. DeRan as attorney to prosecute them for such contempt. Mr. Garn was in court at the time and Mr. Hunt was not. But at the time designated by the court they all appeared.

Now as to some further proceedings in the case, I shall read from a journal entry, for the whole matter seems to be fully set forth in a journal entry of the date of November 21, 1904, that being one of the days of the October term of that year:

"The State of Ohio v. W. S. Bair et al.   Contempt.

"This day this cause came on to be heard upon the matter of the contempt of Winfield S. Bair in the filing of an affidavit of prejudice in the proceedings in contempt set out in charges of contempt heretofore

Hunt v. State.

filed herein by F. E. Seager and H. C. DeRan, as attorneys of this court, appointed therefor, and as members of the committee to examine the commissioners' report.  It appearing to the court that W. S. Bair had filed an affidavit of prejudice in the above entitled proceeding, contrary to law and in violation of an order of this court, and that James Hunt had prepared and procured to be made the affidavit as attorney for W. S. Bair, and that Harry E. Garn, had filed the same, the court heretofore having ordered a citation to issue requiring the said W. S. Bair and the said James Hunt and Harry E. Garn to appear  upon this day, to show cause why they should not be punished for contempt, for the filing and procuring to be filed, and the making of such affidavit.  W. S. Bair and James Hunt and Harry E. Garn, were present in open court and represented by their attorneys, Hon. E. B. King, C. A. Seiders and Col. J. R. Bartlett.

"The court thereupon appointed H. C. DeRan to represent the state and Mr. DeRan being present in court accepted the appointment.

"Thereupon the defendants, W. S. Bair, James Hunt and Harry E. Garn by their attorneys filed a motion to require the court to reduce the charges in contempt to writing, which motion was overruled by the court, to which ruling the defendants at the time excepted, but the defendants, Bair, Hunt and Garn, are allowed time to prepare answers and are permitted to be heard and represented by counsel."

"Thereupon the court stated to the defendants the charge of contempt in the following language, to wit:

"The proceedings in which these affidavits were filed are in contempt.  There is no such thing as an affidavit of bias and prejudice in such a proceeding, and this fact was known to counsel, and the purpose of filing the affidavit could have been none other than interference with the administration of justice and to affront the court.  The affidavits were filed also in violation of a rule of this court.  This rule was also known to counsel.  The proceeding No. 11248, in which the affidavit was filed, was, in its very nature, personal to the court.  To add to an act of contempt in defiance of the court and its rule, was such misbehavior as is contemplated by Lan. R. L. 9171 (R. S. 5639).

"The fact that only such proceedings as are enumerated in Lan. R. L. 9172 (R. S. 5640), require charges in writing, coupled with the well recognized practice on the subject, leads me to the conclusion that this is such a case of misbehavior as may be punished summarily.

"The facts upon which the contempt rests are not such as are contemplated by Lan. R. L. 9172, 9173 (R. S. 5640 and 5641), where there might be an issue of fact and where the court is not familiar with

Sandusky County.

the facts of his own knowledge. The affidavits show that Bair signed the affidavit, and the same is in the handwriting of an attorney, James Hunt; and Harry E. Garn, an attorney, filed the same.''

''It is upon this charge that the persons cited will be tried, and the court asks them and each of them, to show reason why they should not be punished as for contempt.''

''Thereupon the defendants filed answers to the charge of the court, which answers together with the charge, were by agreement taken as the facts in the case.''

Of course that statement could apply only to facts stated by the court and in the answers, and not to the court's opinion upon various matters set forth in the entry. But the fact that these affidavits were filed by Mr. Garn—and that appears to be all that he had to do with it,—the fact that they were sworn to by Mr. Bair in the one case and by Mr. Fronizer in the other, and that they were prepared in each case by Mr. Hunt, are not disputed facts in the case.

I continue from the journal entry:

''And thereupon the case coming on further to be heard upon the pleadings, and upon argument of counsel and the evidence, and the court being fully advised in the premises, finds the defendant, W. S. Bair, guilty of contempt of this court in the manner and form charged, and fines the said Bair $75 and the costs of this proceeding and orders that he stand committed until paid, and the said Bair is remanded to the custody of the sheriff until the said fine and costs are paid.

''And this case coming on further to be heard upon the charges against James Hunt, an attorney, and his answer thereto, and the evidence, and the arguments of counsel, and the court being fully advised in the premises, finds the said James Hunt guilty of contempt as charged, and orders that he pay a fine of $50 and the costs of this proceeding, and orders that he stand committed until paid, and the said James Hunt is remanded to the custody of the sheriff until such time as the fine and costs herein specified are paid.''

The same finding in substance appears against Harry E. Garn, and his fine is fixed at $10.

Motion for a new trial was filed by all of the parties, which was overruled, and sentence was suspended in order that parties might proceed in this court. And afterward, by the filing of petitions in error, the cases were brought here.

I have read the entry in the case of the State of Ohio v. Bair. The entry in the case of the State of Ohio v. Fronizer, is substantially the same, the name of Fronizer being substituted for that of Bair.

### Hunt v. State.

A bill of exceptions was taken in each case. It appears therefrom that there was no oral evidence or other evidence than that mentioned.

The fact that these affidavits of prejudice were filed when the court was not in session is alleged in the answer of Garn and was taken (according to this journal entry) as one of the facts in the case. The fact does not clearly appear from the appearance docket, but it being accepted as true as stated by Mr. Garn, that is sufficient. It does appear from the appearance docket that the affidavits were filed upon Monday morning. At just what hour, does not appear.

Now the bill of exceptions is very short, and I desire to read somewhat from it.

"Be it remembered that at this October term, A. D. 1904, of the court of common pleas for said county and on November 21, 1904, came the above named parties and their attorneys, and said cause came on to be heard, and upon said hearing and trial thereof, the following evidence was introduced:

"A copy of the rule and order and journal entry thereof, made in said court at its April term, 1904, by Hon. Julian H. Tyler, one of the judges thereof, which is attached hereto and marked 'Plaintiff's Exhibit A,' as a part hereof."

The original application or motion presented to this court in the above entitled case, on October 15, 1904, by F. E. Seager and H. C. DeRan, a copy of which is hereto attached, marked 'Exhibit B,' as a part hereof."

(That refers to the application or motion presented by the examiners to the court, asking to have them cited for contempt for not answering certain questions.)

"The affidavit of the above named S. M. Fronizer, filed in the above entitled case on October 17, 1904, a copy of which is hereto attached, marked 'Exhibit C,' as a part hereof."

(That is the affidavit of prejudice.)

"The answers of the said S. M. Fronizer, James Hunt and H. E. Garn, filed in this contempt proceeding, copies of which are hereto attached marked, exhibits 'D', 'E' and 'F,' as a part hereof."

"And there being no other or further evidence in said case offered by either party or given, the court proceeded to render judgment as is otherwise shown in the record hereof."

The bills of exceptions in the two cases, the State of Ohio v. Fronizer and the State of Ohio v. Bair, are the same in substance, the difference being simply one of names.

Sandusky County.

Now the rule referred to, and which has been a matter very much discussed in this case, appears upon the journal of the court of common pleas, and a copy is set forth in this bill of exceptions and it reads as follows:

"In the matter of the adopting of a rule of court.

"It is hereby ordered by the court that every affidavit filed under Lan. R. L. 876 (R. S. 550) of this state shall specifically set forth the facts constituting the interest or relation or bias, or prejudice or other disqualification of the judge of this court and that every such affidavit not in conformity herewith shall be stricken from the files.

"Fremont, Ohio, April 15, 1904. Julian H. Tyler, Judge."

Judge Tyler was one of the seven common pleas judges of this subdivision of this common pleas judicial district.

I wish now to call attention to the affidavit of Mr. Fronizer, which is in form the same as that of Mr. Bair:

"The State of Ohio, plaintiff, v. S. M. Fronizer, defendant. Affidavit.

"State of Ohio, Sandusky county, ss.

"S. M. Fronizer, being first duly sworn on oath says there is now pending before the Sandusky county common pleas court, the above entitled cause and matter numbered 11,249 wherein this affiant is defendant and wherein this affiant is charged with contempt of this court because of his alleged refusal to answer certain questions put to him by the persons heretofore appointed by said court to investigate and examine the annual report of the county commissioners of said county for the year ending September, 1904; that the Hon. Horace S. Buckland is one of the judges of said court of common pleas, in which the said cause and matter is pending, and the said Horace S. Buckland has a bias and prejudice against this affiant in said cause and matter and is therefore and by reason thereof, disqualified to sit in said cause and matter.

"This affidavit is made under Lan. R. L. 876 (R. S. 550)."

This affidavit is signed by Mr. Fronizer, and sworn to before the clerk of the court.

The answer of Mr. Fronizer to the oral charge of contempt, which is the same as that of Mr. Bair, reads:

"Now comes S. M. Fronizer and for answer to the charge of contempt against him says he disclaims any purpose or intention on his part of committing any act of contempt toward said court or any judge thereof in signing, swearing to, or filing the affidavit in case No. 11,249, in this court, but that he filed said affidavit in good faith believing himself entitled to the rights and privileges provided for by Lan. R. L. 876

Hunt v. State.

(R. S. 550), by simply setting forth the grounds in the words of the statutes.''

This answer is verified by him and is signed on his behalf by his attorneys.

The answer of James Hunt reads:

''Now comes the said James Hunt and for answer to the said charge says he disclaims any purpose or intention on his part, of committing any act of contempt toward said court or any judge thereof in writing at his office the affidavit signed by S. M. Fronizer and filed October 17, 1904, in case No. 11,249 in this court.

''And further says that he disclaims any knowledge, information or belief that the filing of said affidavit in said case was not authorized by law, or that the same was in violation of any valid rule of this court.''

This is verified by him and is signed on his behalf by his attorneys.

The answer of Mr. Garn reads:

''Now comes the said H. E. Garn and for answer to the said charge says he disclaims any purpose or intention on his part of committing any act of contempt toward said court or any judge thereof in accompanying his client, on taking the affidavit to be signed by said S. M. Fronizer, to the office of the clerk of said court, on October 17, 1904, and while said court was not in session, in case No. 11,249 in said court.

''And further says that he disclaims any knowledge, information or belief that the filing of said affidavit in said case was not authorized by law, or that the same was in violation of any valid rule of this court.''

This is verified by Garn and signed on his behalf by his attorneys.

Now it will be observed that the court of common pleas was of the opinion that the statute providing for affidavits of prejudice against common pleas judges did not apply to the proceedings then pending, because those proceedings were themselves contempt proceedings, and he says that therefore the filing of such affidavits could have had no other purpose than to affront the court and hinder it in the administration of justice, and that therefore the parties filing the affidavits are guilty of contempt of court. And this conclusion is based, I take it, upon the assumption that they knew that the affidavits of prejudice were not pertinent or proper in proceedings of that character.

And the second branch of the court's oral charge, as we understand it, was that they were guilty of contempt in violating this rule which had been promulgated by Judge Tyler. It is also insisted here upon behalf of the state that Lan. R. L. 876 (R. S. 550) does not apply to any case where a judge in a subdivision having more than one judge

Sandusky County.

is to be disqualified, unless the circumstances are such that an affidavit may be filed disqualifying all of the judges of that subdivision.

With respect to that point we have carefully read and considered the opinion of Judge Summers, now of the Supreme Court, in *Barclay* v. *Salmon,* 9 Circ. Dec. 520 (17 R. 152). Without reading from his opinion or entering upon any further discussion of the matter, we simply say we are satisfied with his reasoning, and his analysis of the statute, and his conclusion as to that matter. It would certainly be a very strange and absurd state of affairs if a state of facts would disqualify a judge from sitting provided another judge in the subdivision was disqualified in like manner or for like cause, whereas, the judge would not be disqualified unless such other judge was also likewise disqualified; and it would certainly be very strange and absurd if the sole judge in a subdivision might be disqualified under this statute for certain causes or reasons, whereas, if there were more than one judge in a subdivision one might not be so disqualified unless all were likewise disqualified. Clearly no good reason can be found for such distinctions.

Our view of this statute is, that it sets forth primarily the grounds of disqualification, and secondarily the means to be pursued to obtain a judge who is not disqualified, and that it applies to all common pleas judges of the state. It is true that the meaning of some of the language which prescribes the course to be pursued is not entirely clear. What Judge Summers has said tends to clarify it very much, and, as I have said, we think his solution of the matter is correct. But whether so or not, whether the means provided are simple or clear or practicable or not, is a matter of not so much consequence, if as a matter of fact those things which are set forth as matters of disqualification are properly set forth so as to disqualify.

Even if it is not necessary or practicable, where there is a judge of the subdivision not disqualified, to proceed under that provision of the statute which requires the clerk to certify the matter to the presiding or supervising judge, still we hold that the affidavit of disqualification of one of the judges of that subdivision prevents him from acting in the case, and that some proper course should be taken—and it would not be difficult to pursue a reasonable and orderly course—to bring in a judge who is not thus disqualified. It seems to be intended that another judge of the subdivision shall be brought in unless all of the judges of the subdivision are disqualified.

A great many questions have been discussed before us in these cases, and discussed with a very great deal of earnestness, and counsel have manifested a very great deal of zeal and industry in searching the

Hunt v. State.

books for authorities and a great deal of ability and learning in presenting the authorities to the court, and in arguing the case generally, but, manifestly, time will not permit a review by us this morning of all these cases that have been cited as authorities, nor a discussion of all the points that have been mentioned. Neither do we deem it necessary.

These plaintiffs in error have been convicted of contempt of court, and when this court has gone far enough to determine whether those convictions should be affirmed or reversed, it has gone as far as it need go, perhaps as far as it may properly go; and though we may be wrong on some of the questions that we shall mention, yet we are entirely confident that we have arrived at correct conclusions upon the material and essential questions presented by these records.

Another question mooted is whether this rule of court, which I have read, is valid. We conclude that a statute may not be modified in any way by a rule of court; that a rule of court in so far as it purports to enlarge or to restrict a statute in its operation, is necessarily invalid. Of course a judge of the court of common pleas cannot repeal or amend a statute of the state. He is bound by the statutes as fully as is the humblest citizen of the state. In cases where a statute contains a provision that is to be supplemented by a rule of court, and in cases where there is no statute on the subject and a rule of procedure is necessary or expedient, it is proper and it is usual to make a rule of court covering the matter. But the rule must not conflict with a statute.

Upon this proposition, I shall read from a single authority, *Knickerbocker Ins. Co. .v. Tolman,* 80 Ill. 106. I do not see it here, but I will read from the opinion of the court in the case of *State* v. *Shaw,* 43 Ohio St. 324, 330 [1 N. E. Rep. 753], where Lan. R. L. 876 (R S. 550) was being discussed and where what I shall read is quoted with approval from the case of *Knickerbocker Ins. Co.* v. *Tolman, supra.*

" 'The fact that the party seeking the change may have no merits, does not change the rule. The right to a change, upon complying with the statute, is secured to him by an express provision of the statute, and the courts have no power to repeal, modify, or mitigate any requirement of the statute.' Mr. Justice Walker said: 'Inasmuch as the granting of a change of venue in civil cases is not discretionary, the court below erred in not allowing the motion. This is the requirement of the statute, and such has been the uniform construction given to it.' "

That was said of a statute of the state of Illinois of like character with Lan. R. L. 876 (R. S. 550). Since I have the book in my hand, I will read a part of the syllabus in the case of the *State* v. *Shaw, supra,*

though it is not pertinent to the point I am discussing, but applies to a point to be considered later:

"Where, under Sec. 550 Rev. Stat., the required affidavit for a change of venue is filed with the clerk of the court of common pleas, the duties of the clerk in regard to such a change of venue are ministerial, and not judicial.

"When a party complies with the requirements of Sec. 550, for a change of venue, and the affidavit shows the fact of the interest of the judge of the court in the event of the cause, proceeding, motion or matter pending before the court, the clerk of the court has no discretion in the case, but he must make the required order and certificate for such a change."

The remainder of the syllabus is to the effect that if the clerk should fail to act he may be proceeded against by mandamus.

Upon this point, that the rule may not modify a statute we cite: *Krutz* v. *Griffith*, 68 Ind. 444; *Shoemaker* v. *Smith*, 74 Ind. 71; *Herbert* v. *Beathard*, 26 Kan. 746; *Krutz* v. *Howard*, 70 Ind. 174. And even a statutory rule limiting the right is to be construed liberally in favor of the right. *Corpenny* v. *Sedalia (City)*, 57 Mo. 88.

I desire to read a few paragraphs from page 176 of *Krutz* v. *Howard, supra.* It appears that the question of the disqualification of the judge under a statute similar to ours, was under consideration, and that a rule of court on the subject had been adopted. It provided that:

"The affidavit for a change of venue or of trial from the judge shall state that the party is informed and believes that he has a good cause of action or defense; and, if a defendant, in general terms, the character of the defense. The affiant shall likewise state that the application is not made for delay."

The statutes of that state provide for the adopting by the court of rules of practice for the conducting of business therein, but this particular statute as to disqualifying a judge did not contain the requirements of this rule.

The seventh clause of Sec. 207 of the statutes is quoted:

"When either party shall make and file an affidavit of the bias, prejudice or interest of the judge before whom the said cause is pending, the said court shall grant a change of venue."

The judge delivering the opinion says: "Under this statute, this court has frequently decided, that, if the affidavit fulfills the requirements of the statute, the duty to grant the change of venue is imperative upon the court," citing, *Witter* v. *Taylor*, 7 Ind. 110; *Mershon*

Hunt v. State.

v. *State,* 44 Ind. 598; *Fisk* v. *Turnpike Co.* 54 Ind. 479; *Duggins* v. *State,* 66 Ind. 350; *Krutz* v. *Griffith,* 68 Ind. 444. And he continues:

''That the affidavit complies with the statute in this case, as to the affiant, is not questioned. Was it necessary that it should comply with the rule of court? Courts have the power, and it is their duty, to adopt rules for conducting the business therein, not repugnant to the laws of the state. Is this rule of the court repugnant to the laws of the state? We think it is. By the law, the party need state only the bias, prejudice or interest of the judge before whom the cause is pending, to entitle him to a change of venue. By the rule of court, in addition to one of these, the affiant, being a defendant, is required to state that he is informed and believes that he has a good defense, and in general terms to state the character of the defense, and also that the application is not made for delay. We do not see what this rule has to do with conducting the business of the court. It does not relate to simplifying or expediting the proceedings, or presenting distinctly the points in issue, or diminishing costs, or in remedying any imperfections that, exist in the practice; it simply adds, and is repugnant, to the law. The court cannot add to or take from the law 'one jot or one tittle.' It must adjudicate and administer the law as it is. The court erred in overruling the motion for a change of venue.''

It follows from this that unless the statute requires the setting forth of the facts constituting bias and prejudice, etc., the rule is in derogation of the statute and therefore void. This may be stated in another form, *i. e.,* the rule is valid in so far as it is in harmony with the statute, and void in so far as it is not in harmony with the statute; and therefor, since the rule may neither add to nor subtract from the requirements of the statute, we may as well go to the statute in the first instance and ascertain what need and what need not be stated in the affidavit. And we conclude that the statute does not require the setting forth specifically of the facts constituting the bias or prejudice of a judge. The only matter or part of the rule we have to consider in this case, is that pertaining to bias or prejudice. Whether the rule is valid in requiring that the relationship shall be set forth specifically, *i. e.,* whether the parties in interest are related remotely or closely to the judge; whether by consanguinity or by marriage, or in a business way or as members of some church, or society or otherwise, we need not say. And where the specific disqualifications mentioned in the statute are not relied upon, but the judge is to be set aside on account of some other disqualification coming under the general terms of the statute, whether such other grounds of disqualification shall be set forth

and stated specifically we need not and do not say. And upon the proposition, also sustained by the authorities cited, that it is not necessary to go farther than to set forth the statutory grounds of disqualification in the language of the statute, we cite in addition thereto, *State* v. *Wolfe*, 6 Circ. Dec. 118 (11 R. 591); *Barclay* v. *Salmon*, 9 Circ. Dec. 520 (17 R. 152); *Witter* v. *Taylor*, 7 Ind. 110; *State* v. *Kent*, 4 N. Dak. 577 [2 N. W. Rep. 631; 27 L. R. A. 686]; *Taylor* v. *Gardiner*, 11 R. I. 182; 19 Enc. Pl. & Pr. 219.

Other cases have been cited by counsel that we have not had an opportunity to examine. We also cite the case of *Cantillon* v. *Cincinnati*, 15 Dec. 295. The decision is by Judge Smith, of the superior court of Cincinnati and it appears to us to advance very forcible reasons for holding (as is there held) that it is improper to set forth more than the statutory grounds in the language of the statute.

I shall not take time to read what other courts have said upon this subject. We adopt so much of those decisions as hold that the setting forth of the disqualification of the bias or prejudice in the language of the statute is sufficient.

The courts of some other states passing upon statutes similar to ours express opinions contrary to those expressed in the cases upon which we rely. We are cited to *Schmidt* v. *Mitchell*, 101 Ky. 570 [41 S. W. Rep. 929; 72 Am. St. Rep. 427], a decision that follows, *German Ins. Co.* v. *Landram*, 88 Ky. 433 [11 S. W. Rep. 367, 592]; *Emporia (City)* v. *Volmer*, 12 Kan. 622; *Curtis, Ex parte*, 3 Minn. 274.

An examination of the statutes of these states discloses the fact that the facts stated in the affidavit to disqualify as grounds thereof, are to be investigated either by the judge against whom the affidavit is filed, or by another, in some instances a judge *pro tem;* and, where this is so, there seems to be good reasons for holding that the ordinary rules of pleading should be applied to such affidavits, and that the primary facts should be stated in issuable form; but where, as in this state, there is to be no inquiry, but the judge is required to step aside upon the statutory ground being stated, and any action to be taken by the clerk of the court or by the presiding judge of the district is merely ministerial, and where a more particular statement of the facts would make no difference in the result, we cannot discover any valid reason for requiring such particularization. A different rule might have obtained when our statute provided that in case prejudice "should appear" or "should be shown" or "should happen" or "should be made to appear," etc., (I quote from recollection and probably not with accu-

racy, but I believe according to the sense of some of our earlier statutes upon this subject).

But now the affidavit is not the basis of an inquiry, but it requires action without inquiry, if it meets the requirements of the statute. In that respect it differs radically from affidavits for attachments and other affidavits that may be disproved. *State* v. *Shaw,* 43 Ohio St. 324 [1 N. E. Rep. 753]; *State* v. *Wolfe,* 6 Circ. Dec. 118 (11 R. 591); *Barclay* v. *Salmon,* 9 Circ. Dec. 520 (17 R. 152).

There is another reason why this rule in so far as it applies to bias and prejudice should not be regarded, and why no attempt should be made to comply with it, and that is, that it is impossible to comply with it. It may be possible to set forth specifically the facts constituting interest, or the facts constituting relationship, or some other facts, (perhaps most other facts) disqualifying a judge, but how can one state specifically the facts constituting bias or prejudice? Bias or prejudice is a state of mind like love or anger or fear. It is not only an ultimate fact, but it is a primary, elementary and initial fact. It will be observed that the rule does not require that the affidavit shall state wherein or in what respect the judge is prejudiced, nor that the affidavit shall state the evidences or manifestations of such prejudice, or the causes, or the supposed causes thereof, but that the constituent facts of the state of mind called "bias" or "prejudice" shall be stated.

Well this, as very well said by Judge Follett in his opinion, in *State* v. *Wolfe, supra,* to which I have referred, leads us into the realms of metaphysics. There may be some rule or system of psychology by which that state of mind may be analyzed and separated into its constituent elements, but it is not apparent to us that it is so. We think it is impossible to do it. We think that the learned judge in adopting this rule, which may be practicable in so far as interest or relationship and some other grounds of disqualification are concerned, must have lost sight of the fact that the state of mind which we describe as bias or prejudice cannot be thus analyzed and set forth.

But if the statute, or the rule, or both, require such specific statement of facts constituting bias or prejudice, and if they may be complied with, a mere failure to comply does not, in our opinion, amount to contempt of court. The failure to observe the statute, or the rule, is not contempt of court *per se.*

A definition of contempt of court—and there are many definitions —but one that we regard as a very good one, is quoted in one of the

3   O. C. C. Vol. 27

briefs, and if I read the brief correctly, is from 7 Am. & Eng. Enc. Law (2 ed.) 27, to wit:

"In its broad sense a contempt is a disregard of, or disobedience to, the commands of a public authority, legislative or judicial, or an interruption of its proceedings by disorderly behavior or insolent language, in its presence or so near thereto as to disturb its proceedings or impair the respect due to its authority."

It will be observed that that definition includes contempts that are direct and in the presence of the court, and that may be punished summarily, and it includes contempts that are not in the presence of the court, that may also be punished by the court if upon inquiry guilt shall be established.

The authorities give many illustrations of what are and what are not acts of contempt, and they are not in entire harmony, but so far as we have been able to examine, where one is pursuing in an orderly and decent way and in good faith, what he supposes to be his right in a court of justice, he is not guilty of contempt though he falls into error and violates rules of court and even statutes, (not penal), without number; but to constitute contempt in such case, there must be something in the manner of doing the thing, or something in the circumstances under which it is done, that must be disrespectful to the court, or a hindrance to the administration of the affairs of the court, and the act must be done wilfully and for an illegitimate or improper purpose.

An allegation that the petitioners believe the court is prejudiced in favor of the plaintiff, from a ruling of the court made in a former case, is not contempt of court. *Le Hane* v. *State,* 48 Neb. 105 [66 N. W. Rep. 1017] ; *Mullin* v. *People,* 15 Colo. 437 [20 Pac. Rep. 880; 9 L. R. A. 566; 22 Am. St. Rep. 414] ; *Thomas* v. *People,* 14 Colo. 254 [23 Pac. Rep. 326; 9 L. R. A. 569].

An attorney moved for a change of venue upon an affidavit stating, in the language of the statute, that he could not receive a fair trial because the judge was interested or prejudiced, held, not a contempt of court. *Curtis, Ex parte,* 3 Minn. 274.

So too, we say that even though the statute may not apply unless all the judges of the subdivision are disqualified, or may not apply to such matter as contempt proceedings, the making of the affidavit is not contempt *per se.*

There is a dictum which seems to be somewhat contrary to this in the case of *Wallace* v. *Scoles,* 6 Ohio 428. But we take the remark of the judge there to be one of that character that judges sometimes make without very full consideration, where they are not discussing the

Hunt v. State.

precise issue involved; and yet it may be true that an attorney who in violation of a rule of court becomes surety upon an appeal bond, **may** be punished for contempt. But we think not because of the mere **fact** of signing as a surety. There must be some circumstance, something in the manner of his doing it, that would make it a contemptuous act upon his part. Manifestly a litigant or his attorney is not to be punished for contempt for a mere mistake.

It is laid down in many cases that disobedience to an invalid rule or order is not contempt of court, and that rule is applicable to the cases at bar, and seems to be so clearly right as to admit of no doubt.

In this case, we are bound to say the record does not disclose that any disrespect or affront to the court was cotemplated. It is not necessarily disrespectful to the court or the judge to charge the judge with bias or prejudice. We are all biased and prejudiced about various matters and persons we come in contact with and have to deal with. Illustrations of this are not required. This is apparent to all.

It will be remembered that one time we had occasion to settle the question of the title of two claimants of the presidency by a commission of fifteen persons, and the fifteen were chosen from a great many of the ablest and most exalted and most honorable men of the nation, and a great many of those men were rejected by those who had the choosing of the commissioners, not because they were not personally honest and above reproach, and not on account of anything that was a reproach to them, but because they were prejudiced as public men with respect to certain public questions and policies involved. It often happens that a judge without anybody's motion but his own steps down and out and gives place to another, conceding that he might be prejudiced, and that he is therefore an unfit person to sit in the case; and he does it without shame or occasion for shame or reproach. He confesses simply that he is human and subject to the frailties and imperfections of humanity. A juror may be rejected on account of prejudice and interest, etc., and the best men of the country are set aside on that account daily and they are not disgraced, their motives are not impugned nor their characters or reputations damaged. They go down again into the community and amongst their fellow citizens, and into their families and their various associations, without their reputations having been smirched or impaired in the slightest degree upon that account.

Either the judge in this case has put a wrong construction upon the mere change of bias or prejudice, or else there was more in the matter than has been brought to our attention by this record. But we must judge by the record.

Sandusky County.

It is said on behalf of plaintiffs in error that their purpose in not attempting to comply with this rule was to test its validity, and that they were proceeding in a decent and orderly way to do it. It is said on behalf of the state that in the subsequent proceedings for contempt the purpose of the court was to test this rule. Well, these cases before us may test whether under the facts here shown by the record one may be punished for contempt, without at all testing the validity of this rule. If, however, in the cases in which the affidavits were filed, parties had been dissatisfied with the decision of the court, and had not been willing to comply with it, and had prosecuted error on account of his ignoring the affidavits, then the validity of the rule might have been brought directly in issue. And it seems to us that an attorney ought not to be regarded as in contempt of court, nor his client, if they in good faith believe that a rule in some way circumscribes the rights the law gives them and, thus believing, proceed by ordinary legal methods to test its validity. And unless there is something very extraordinary about the case, calling upon the court to invoke this extreme course of proceeding to punish them, we regard contempt proceedings as quite inappropriate. *Haines* v. *Haines*, 35 Mich. 138; *Weeks* v. *Smith*, 3 Abb. Pr. (N. Y.) 211.

Obviously, an attorney who would refrain from thus proceeding, or who would induce his client to thus refrain, where he was acting in good faith and upon an honest belief that such action was necessary to preserve his client's interests or to maintain his own rights, an attorney who under such circumstances, would fail to act, through fear of consequences either in the way of disfavor upon the part of the judge or punishment by fine or imprisonment, would and ought to be branded as a craven and a poltroon, and he would be quite unworthy of his high commission as a member of the bar. He would be recreant to the honorable traditions of the bars of England and America, which bodies have always been in the van in every movement and effort to resist the tyrannical exercise of arbitrary power by government or its agents.

On the other hand, parties and attorneys may and doubtless do use this statute illegitimately, as, for instance, for delay merely, to vex and wear out an opponent, or, perhaps, to try to annoy and humiliate the judge whose qualifications are challenged, and for other improper purposes.

Such misuse of the statute generally involves perjury; and therefore it is said that where the primary facts are not set forth a conviction of perjury may be difficult or impossible, and it is argued that this affords good reason for holding that the statute should be so contsrued

Hunt v. State.

and enforced (by the aid of rules or otherwise) as to require a specific statement of the primary facts constituting the ultimate fact that disqualifies the judge.

While this may be a fair and a forcible argument to be addressed to the lawmaking body to persuade it to change the law in this particular (though we do not deem it conclusive, but are persuaded that strong reasons may be advanced for leaving the law so that the bare statement of the ultimate fact shall suffice, one of which reasons is set forth in the opinion of Judge Smith before mentioned), we do not regard this as a proper test and certainly it is not a controlling test of the meaning of the law on this point. Though the prevention of a misuse of the law, and especially through perjury, is desirable, it should be borne in mind that the primary object of the law is not the prevention of perjury, but is entirely different; so that the prevention of perjury cannot be looked to as the pole star to guide us in its construction.

Though conviction of perjury or subornation of perjury may be difficult or even impossible in most cases of such misuse of this law, and proceedings for contempt may not generally be appropriate or effective, yet an attorney cannot be guilty of such offense with impunity if the court does its whole duty in the premises; for the statute providing for disbarment or disciplinary punishment of an attorney guilty of unprofessional conduct involving moral turpitude, affords an appropriate and effective means of prevention or punishment. No doubt there have been many and most flagrant and vexatious abuses of this statute, and in some cases parties have been prevailed upon by their attorneys to make oath that the judges were biased and prejudiced against them and their causes, when the judges had no acquaintance with or knowledge of the parties or their causes, and there was no just or valid ground for challenge known to or suspected by attorney or client. Of course such practices are highly reprehensible. They are immoral and criminal, and the offenders should be severely dealt with. The judge owes it to himself, his position, the cause of justice, the reputable and honorable members of the bar, and to society generally, to do his utmost to bring such offenders to justice. Happily the attorneys who are guilty of such practices are comparatively few, but unfortunately their power to do mischief is vastly greater than, and disproportionate to, their general standing at the bar.

In the cases before us, however, we deem it only fair and proper (after finding an absence of evidence in the record of unprofessional conduct preventing us from concluding that the attorneys concerned

Sandusky County.

were guilty of unconscientious •behavior), to add that their known probity and honorable standing as citizens and as lawyers oppose such a conclusion.

I have said enough to indicate that we find and hold, independently of any question about the validity of the rule or the requirements of the statute, that this record does not show affirmatively that there was anything done that amounted to contempt of court. There is nothing in the affidavit that in and of itself is contemptuous. The disavowels—the disclaimers in the answers would have a tendency to purge the parties of any contempt of which they might have been guilty, but those answers being received here as statements of facts, and not being in any way disproved or questioned or impeached, they reach farther—they meet and overcome anything smacking of contempt that might be found here by strained construction. Nothing else is shown than is shown by these papers, and we think that in a case like this, the judge who was hearing and considering the matter could not properly take into consideration and apply as evidence what he may have supposed or known personally about circumstances and motives, of which no evidence was produced on the hearing.

It is a *quasi* criminal proceeding. The presumptions are all in favor of the persons charged with the offense, *i. e.*, in favor of innocence. It is not a case of the character where a court reviewing the conviction is to assume, in the absence of evidence to the contrary, that the action of the tribunal below was correct and lawful. It is a case where the guilt of the person convicted must appear affirmatively in the record. The offense is in its character like those set forth in the chapter of the criminal code on offenses against public justice, particularly Lan. R. L. 10541 (R. S. 6907).

The judge hearing this matter was of the opinion that contempt proceedings like those pending against Fronizer and Bair, were not matters with respect to which a judge might be disqualified under Lan. R. L. 876 (R. S. 550) of the statute.

As to that we think he was in error. We call attention to the statute, division 7 of the code, which contains nineteen chapters, each chapter dealing with a different subject or different form of proceeding. They are all denominated at the heading of the division, "Special Proceedings." They are, "Amercement, Arbitration, Bastardy, Contempts of Court, Dissolution of Corporations, Divorce and Alimony, Dower, Habeas Corpus, Partition, Real Actions, Replevin, Sureties— Rights and Remedies of, Taxes and Assessments—Relief against, Illegal

Hunt v. State.

to Change Name, to Contest Will, to Cure Certain Defects, Errors and Omissions, to Perpetuate Testimony, Water Craft, Wreck Masters."

Contempt of court is one of those. It is put in the category with the others as a proceeding of the same general character, or answering to the same general description of "special proceedings." And it seems to us that the argument made is well founded, that if we are to regard Lan. R. L. 876 (R. S. 550) as not applicable to proceedings for contempt of court, we must regard Lan. R. L. 876 (R. S. 550) as not applicable to these other special proceedings set forth in the other eighteen chapters of this division, and that that would be absurd, I need not stop to argue.

To say that the charge of contempt is to be investigated by that court only in which the contempt is charged to have been committed, does not meet the question, for this statute does not provide for the removal of the matter to another court, but only for a change in the personnel of the court—the judge is changed, the court remains the same.

*Lamonte* v. *Ward,* 36 Wis. 558, is in point. There, the question was whether a contempt proceeding was a matter within the purview of a statute similar to our statute, Lan. R. L. 876 (R. S. 550). Our statute uses the term "cause or matter" and it is insisted by defendant in error that this is not a cause or matter. In the opinion in that case it is said:

"It is stated in the complaint that the case of *Lamonte* v. *Pierce* was commenced in the Milwaukee county court; that all of the proceedings in the cause until after the alleged contempt was committed by Pierce, were had in that court; and that, pending an application to punish Pierce for such contempt, the venue was duly changed to the circuit court. It is now claimed, on behalf of the appellants, that such change of venue was without authority of law, and, consequently, that the circuit court never obtained jurisdiction of the proceeding. The statute provides for the removal from the county to the circuit court of any cause *or matter* which shall come before the county court or judge, in which the judge shall be interested, or in which he shall have acted as counsel for any party. R. S. Ch. 117, Sec. 59, as amended by Ch. 33, Laws of 1862 (Tay. Stat. 1323, Sec. 84). If this proceeding is not a *cause* within the meaning of the statute, it is, certainly, a *matter,* and we have no doubt it is within the intention as well as the letter of the statute."

But without a decision of any court, we would be unable to come to the conclusion that so broad and comprehensive a descriptive term as

the word "matter" would not comprehend or include an inquiry of the character that was pending against Fronizer and Bair. It was a proceeding in which there were parties. It was not *ex parte*. It was the state upon the one side, and they upon the other, and though not directly criminal, it was a *quasi* criminal proceeding in which a judgment of fine and imprisonment was authorized.

We further hold that the charge was not of contempt in the presence of the judge, and therefore written charges should have been filed. And this, under the provisions of Lan. R. L. 9171 (R. S. 5639) *et seq*. And we think that the statutes upon the subject are so clear that it is not necessary to seek for further authorities, although with respect to this matter there are expressions of judges, and of courts, that seem to sustain the views entertained by the judge of the court below. We cannot account for those views except upon the theory that the judges were not always quite attentive to the language of the statute.

But that may have been excusable in those cases, because the precise point as to whether written charges should or should not be filed, was not involved therein and was not necessary to be decided; and in most of the cases where expressions of this kind are used, written charges were in fact filed. I cannot stop to review those cases. The statute, Lan. R. L. 9171 (R. S. 5639) reads:

"A court, or judge at chambers, may punish, summarily, a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

And that, we understand, is not intended to be restrictive of the inherent common-law right of the court, but it is sufficiently comprehensive to include all of the power that the courts at common law ever had to punish contempts summarily.

Then Lan. R. L. 9172 (R. S. 5640) reads:

"A person guilty of any of the following acts may be punished as for a contempt:

"1. Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer.

"2. Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions.

"3. A failure to obey a subpoena duly served, or a refusal to be sworn, or to answer as a witness, when lawfully required.

"4. The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by him.

Hunt v. State.

"5. A failure upon the part of a person recognized to appear as a witness in any court, to appear in compliance with the terms of his recognizance."

The precise charge against these parties was that they had disobeyed a lawful order and rule of the court, and with respect to proceedings under that section, Lan. R. L. 9173 (R. S. 5641), provides:

"In cases under the last section, a charge in writing shall be filed with the clerk, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel; but this section shall not be so construed as to prevent the court from issuing process to bring the accused party into court, or from holding him in custody, pending such proceedings."

In the cases at bar, the affidavits were not prepared, sworn to or filed while court was actually in session, and no overt act was done by any of the accused persons while court was actually in session.

These parties were brought into court without process. They came into court upon being notified orally that the court desired their presence to answer to this charge; but they did not waive formal written charges. By a written motion they asked that such charges be prepared and filed and this motion was overruled. This was error. *Welch* v. *Barber*, 52 Conn. 147, 148 [52 Am. Rep. 567]; *Lowe* v. *State*, 9 Ohio St. 337; *Myers* v. *State*, 46 O. S. 473 [22 N. E. Rep. 43; 15 Am. St. Rep. 638]; Rapalje, Contempt Sec. 21.

Our conclusion is that these convictions should be reversed and they are reversed:

1. Because of error in overruling the motion for written charges, and proceeding with the inquiry to judgment without written charges.

2. Because the conviction is not supported by the evidence and is therefore contrary to law.

And the same judgment will be entered in each of the six cases.

**Hull** and **Haynes, JJ.,** concur.